No. 21,531.

The Missouri, Kansas & Texas Railway Company, *Appellee,* v. The Public Utilities Commission of the State of Kansas, *Appellant.*

SYLLABUS BY THE COURT.

1. Utilities Commission — *Schedule of Freight Rates — Unreasonable and Discriminatory—Injunction.* The record and the evidence examined, and held sufficient to support a finding and judgment of the trial court that a schedule of freight rates on chats, gravel, and rough stone, from Galena, Kan., to points in Kansas on the Missouri, Kansas & Texas Railway, which was ordered to be established by the public utilities commission, was unreasonably low and discriminatory, and unjust to the railway company, and that such schedule of rates was properly enjoined.

2. Same—*Discriminatory Freight Rates—Burden of Proof.* A carrier may sufficiently maintain the burden of showing that a schedule of freight rates is unreasonable or noncompensatory by whatever evidence

may be available and without undertaking the almost impossible task of proving the ultimate and controlling fact with the precision of a mathematical theorem.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed May 11, 1918. Affirmed.

H. O. Caster, and F. S. Jackson, both of Topeka, for the appellant.

W. W. Brown, James W. Reid, both of Parsons, and J. G. Slonecker, of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The public utilities commission appeals from a judgment of the district court of Shawnee county enjoining an order of the commission issued in April, 1915, directing the plaintiff to publish and observe a new and reduced schedule of freight rates on mine chats, gravel, and rough stone, from Galena to the several stations on its railway in Kansas within 150 miles of that city. The order was made pursuant to a hearing before the commission upon the complaint of the Galena commercial club. Within 30 days thereafter, the railway company brought this suit, charging that the freight rates sought to be established by the commission were unlawful, unreasonable, and discriminatory—

"That the said order and schedule of rates is unjust and that its enforcement by the defendant would deprive this plaintiff of its property without due process of law and deny to it the equal protection of the law."

Issues were joined and certain statistical and opinion evidence was introduced, and certain incidents touching the commercial aspects of the trade in chats in and near Galena were established; and by agreement of parties the evidence presented to the commission at its hearing was also introduced. The finding of the district court read:

"The court finds the issues in favor of the plaintiff and against the defendant, and that the schedule of rates promulgated by the defendant on the 5th day of April, 1915, over the lines of the plaintiff railroad, from its station at Galena to other stations on its line, within the state of Kansas, on mine chats, gravel and rough stone is unreasonably low and discriminatory and would be unjust to the plaintiff company."

On this finding the rates were enjoined, and the errors as-

signed challenge the sufficiency of the evidence upon which the judgment is based.

In this behalf the defendant's argument begins with a reminder that the rates fixed by the commission are presumed to be reasonable, and that the burden is on the plaintiff railway to show the contrary. We do not understand that the plaintiff disputes this as an abstract principle. The railway company assumed the burden in the district court of overturning that presumption. Whether the evidence adduced in its behalf did overcome that presumption, or—to put it more precisely—whether the evidence was of sufficient probative force to justify the trial court in finding that the presumption was overthrown and the contrary established, is the only question which this court can consider. To determine this we have not only perused the abstract but the transcripts of the evidence presented to the commission and to the trial court. This evidence tends to show that for certain rate-making purposes Galena is grouped with certain neighboring Missouri towns, including Joplin which is less than eight miles away, and that this group of towns enjoys the same freight rates on chat, etc., except that at the time this rate was being considered by the commission, and for about a year prior thereto, there was in effect in Missouri a statutory rate on chats, etc., less than the then prevailing Kansas and interstate rates. The evidence tends to show that for several years prior to the filing of the complaint before the defendant commission by the Galena commercial club, the shipment of chat had practically ceased, except for use as railway ballast. This was partly caused by the fact that Galena chat was not of so good a quality as the chat obtainable in Joplin and the other towns grouped with Galena. Another reason was that these other towns grouped with Galena had better facilities for loading the chat; and the cost of loading and transportation is practically all that the chat is worth. At the points of production it has no substantial value. The Missouri statutory rate, which appears to have been accorded considerable weight by the commission in fixing the rate complained of, had not been long in effect, and it was not voluntarily acquiesced in by the railway company, and that rate has since been substantially increased by the

Missouri state commission. Freight rates, voluntarily established by carriers, and rates established by authority of law, —whether by legislatures or by commissions—and rates judicially determined to be reasonable and just, are practical and valuable aids in rate-making and in determining the fairness of a disputed rate, provided, of course, that the similarity of the traffic conditions is established or a proper allowance is made to overcome existing differences in traffic conditions. (*Railroad Co. v. Utilities Commission,* 95 Kan. 604, 616, 148 Pac. 667.) But a freight rate imposed upon a carrier by whatsoever authority, which the carrier has not assented to, and which it has not had a reasonable time and opportunity to contest, is of very little probative value, either for rate-making or for determining the reasonableness of a questioned rate, even if the density of traffic and other pertinent conditions attending it are similar, or their proper relationship be conceded or established. It would seem that the abrogation of the Missouri rate from the Joplin group points used by the defendant commission as an aid in determining the rate from Galena here complained of, and the granting of a substantially higher rate in Missouri, were evidential circumstances of considerable force which the trial court could properly consider in determining the reasonableness and justice of the commission's order establishing rates out of Galena.

The evidence also showed that the use of chat, etc., from the Galena-Joplin group of shipping points comes in competition with the use of gravel from Emporia, Council Grove, and Chanute, and with the use of crushed stone from Iola and Junction City; and the trial court might properly give some consideration to those facts. We would not intimate that a rate from Galena could not be reduced because it would unsettle competitive conditions elsewhere, but it is proper to consider all these facts in determining whether a rate reduction is fairly designed to measure the respective rights of shipper and carrier, or to discriminate in favor of a shipper or shipper's club against rivals in business, while largely losing sight of the just rights of the carrier. If the commission's rates from Galena are established, it would be possible for Galena chat to invade and preëmpt a wide marketing territory in which the producers of gravel and crushed stone now meet and compete under lawful

and long-established Kansas freight tariffs. Furthermore, if the rates out of Galena are to stand, Joplin and the other near-by points in the same group would be entitled to a reduction in their interstate rates so that they might continue to enjoy their trade in Kansas territory. This is the doctrine of the Shreveport case. (*Railroad Commission of La. v. St. L. S. W. Ry. Co.*, 23 I. C. C. 31; *Houston & Texas Ry. v. United States*, 234 U. S. 342, 58 L. Ed. 1341; *Railroad Co. v. Utilities Commission*, 95 Kan. 604, 626, 148 Pac. 667.) Under the doctrine of these cases the plaintiff railway is forced to the alternative of contesting the Galena rates, on which little or no traffic moves and which could in no event become other than a negligible factor in its business, or subject itself to the likelihood of seeing its revenues depleted by a corresponding reduction in the interstate rates from the other Joplin group points. Furthermore, if the Joplin interstate rates were reduced, the superior quality of Joplin chat would again drive the inferior Galena chat out of the market.

Whether this was the course of reasoning by which the trial court arrived at its finding and judgment, we cannot say; but these considerations were well within the purview of the evidence. There was considerable opinion evidence of experts, both for the plaintiff and the defendant. Some of these were traffic men of large experience, and while their eagerness to serve their employers was a thing to be considered in weighing their testimony, they were subjected to skillful cross-examination, and the experienced trial judge who heard them testify must be deemed to have given proper weight to their testimony. Since expert and opinion evidence is competent, its value must largely be left to the trial judge, who sees and hears the witness, his manner of testifying, his apparent candor and familiarity with the subject, and any interest he may appear to have in the controversy. In our opinion, the great preponderance of this class of testimony, whatever its worth might be, was that the rates complained of were unreasonably low.

Besides, the reductions required by the order of the commission are themselves of some evidential potency. These reductions run from 8 percent to 75 percent, and average 34 percent below the former long-established rates on which this commodity has freely moved from points grouped with Ga-

lena in southeastern Kansas and southwestern Missouri for many years.

It is finally urged that the railway company did not produce any figures showing the cost of moving chat from Galena, and therefore it was not clearly proved that the rate complained of is noncompensatory. But the courts have recognized that this sort of evidence is seldom, if ever, available; and until railroads and shippers, or legislatures and commissions and courts, or all of them together, can settle and agree upon some arbitrary factor to be included as the proper proportionate burden of investment, maintenance, administration, taxation, wages, service, etc., which every commodity hauled by a railroad should bear, the evidence which appellant says was wanting in this case will be wanting in every case; and if the failure to produce that particular line of evidence is fatal to the carrier's cause, it would always be useless to seek judicial redress. A freight-rate lawsuit is in most respects like any other lawsuit. It has to be decided on the evidence which the parties can and do present, and justice cannot be withheld because a rate complained of cannot be shown with the precision of a mathematical theorem to be noncompensatory.

After a painstaking study of this record the court can discern no ground for a reversal, and therefore the judgment is affirmed.