No. 38,715

GUY A. THOMPSON, Trustee, Missouri Pacific Railroad Company, Debtor, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS and THE GARDEN CITY COMPANY, a Corporation, *Appellees*.

(246 P. 2d 257)

Opinion filed July 3, 1952.

*Ralph M. Hope,* of Wichita, argued the cause, and *W. F. Lilleston,* of Wichita, and *D. B. Lang,* of Scott City, were with him on the briefs for the appellant.

*Byron M. Gray,* of Topeka, argued the cause, and *Jay Kyle,* of Topeka, and *Roland H. Tate,* of Garden City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment of the district court sustaining an order of the State Corporation Commission prescribing certain intrastate rates for the transportation of sugar beets in carloads.

On June 5, 1951, the Garden City Company, a corporation, operating a sugar refining plant at Garden City, Kan., filed a complaint with the State Corporation Commission against Guy A. Thompson, Trustee, for the Missouri Pacific Railroad Company, and the Atchison, Topeka and Santa Fe Railway Company, complaining of sugar beet rates then in force and effect. The complaint sought the establishment of a joint rate on shipments of sugar beets from Setab, Kan., to Garden City and from Marienthal, Kan., to Garden City, over the Missouri Pacific to Scott City, Kan., and the Santa Fe from Scott City to Garden City.

Hereafter for convenience and in the interest of brevity, the Corporation Commission will be referred to as the Commission, the Commission and the Garden City Company as appellees, Guy A. Thompson, Trustee, Missouri Pacific Railroad Company, Debtor, as the Missouri Pacific or appellant, and the other railroad involved as the Santa Fe.

A hearing on the complaint was held by the Commission on August 1, 1951, at which testimony on behalf of the complainant and the Missouri Pacific was introduced. Although notified, the Santa Fe did not appear at this hearing and offered no evidence. Thereafter, by an order dated August 21, 1951, the Commission directed the involved railroads to establish and put into effect, in the manner prescribed by law, on or before September 20, 1951, a rate on sugar beets in carloads from Setab to Garden City of ninety cents per ton of 2,000 pounds, minimum weight of forty tons, and from Marienthal to Garden City of $1.10 per ton of 2,000 pounds, minimum weight of forty tons. Following the issuance of such order an application for rehearing was filed with the Commission in conformity with the statute (G. S. 1949, 66-118b) and subsequently denied.

In due time, as authorized by law (G. S. 1949, 66-118c) the Missouri Pacific filed an application for a review of the Commission's order in the district court of Scott county. There a trial was had on the application upon the evidence and record in the proceeding before the Commission, as certified to the district court by that body in accord with the provisions of G. S. 1949, 66-118f, and judgment was rendered sustaining the Commission's order as lawful and reasonable. Thereupon the Missouri Pacific filed a motion for new trial and when it was overruled perfected this appeal.

In addition to those already related the facts of record, some of them disclosed by appellant's evidence and others by appellees', which can be classified as uncontroverted can be stated thus:

Prior to June 5, 1951, the Garden City Company, whose refinery competes with other sugar refineries located at Sugar City, Swink, and Rocky Ford, Colo., in purchasing sugar beets and selling refined sugar and was vitally interested in transportation costs of sugar beets because they were an important element in the costs of production of sugar, made application to various railroad rate making agencies and finally to the Missouri Pacific itself for the establishment of joint freight rates on sugar beets from Marienthal and Setab to Garden City. When these applications were denied the company filed its complaint with the Commission.

In the general beet sugar area of western Kansas and eastern Colorado the carriers maintain voluntarily published rates on sugar beets to the refineries. Such beets move on these rates and do not move on higher class rates.

The facts hereinafter related have reference to conditions existing at the time of the hearing before the Commission and are also undisputed.

Garden City is on the lines of the Santa Fe thirty-eight miles south of Scott City, the latter point being served by both the Santa Fe and the Missouri Pacific. From Scott City to Garden City the Santa Fe published a voluntary rate on sugar beets of fifty-five cents per ton. Setab, served by the Missouri Pacific, is located 4.3 miles distance from Scott City and the only rate available between the two points was a class rate of 220 cents per ton. No through rate existed from Setab to Garden City, hence the only available rate was a combination of the local rate of the Santa Fe for the thirty-eight miles from Scott City to Garden City of fifty-five cents and the local rate of the Missouri Pacific for the 4.3 miles

from Setab to Scott City amounting to 275 cents per ton for 42.3 miles. Marienthal, also on the Missouri Pacific lines, is located 16.6 miles from Scott City and the only rate available between such points was a class rate of 260 cents per ton. No through rate was available from Marienthal to Garden City with the result the only existing rate was a combination of the Santa Fe's local rate of fifty-five cents for the thirty-eight miles from Scott City to Garden City and the Missouri Pacific's local rate of 260 cents for the 16.6 miles from Marienthal to Scott City amounting to 315 cents per ton for a distance of 54.6 miles.

By way of contrast the evidence discloses the Missouri Pacific maintained a voluntarily established single line rate on sugar beets from Setab to a competing sugar refinery located at Sugar City, Colo., of $1.735 for a distance of 154.4 miles and a similarly established rate of $1.59 from Marienthal to the same point in Colorado for a distance of 142.1 miles. When the local Missouri Pacific rate of $2.20 for the distance of 4.3 miles from Setab to Scott City, was compared with other rates the evidence revealed that under the voluntary Kansas scale the rate would be thirty-two cents; that under the general level of rates maintained vountarily by the Missouri Pacific intrastate in Colorado the rate would be twenty-five cents; and that under the general level of rates so maintained by the Santa Fe in Colorado the rate would be thirty cents. Comparing the Missouri Pacific rate of $2.60 for the 16.6 miles from Marienthal to Scott City in like manner it established that under the Kansas scale the rate for such distance would be forty-two cents; that under the level of rates applied by that railroad on Colorado intrastate shipments the rate would be forty-five cents; and that under the level of rates applied by the Santa Fe intrastate in Colorado the rate would be forty cents.

In summary fashion it can be said the evidence offered by the Missouri Pacific showed that the total revenue per car to be produced from the rates sought would only be $36 on car lot shipments from Setab and $44 on like shipments from Marienthal; that predicated on published percents agreed upon by the railroads for divided joint line rates on intrastate traffic, the revenue it would derive on such shipments from Setab would be $10.80 and from Marienthal $13.32; and that its out-of-pocket cost of handling such shipments per car would be $44.73 from Setab and $41.40 from Marienthal. At this point it should perhaps be stated that due largely to differences between the parties respecting the manner

and method of their computation and other evidence heretofore related the correctness of the cost estimates just mentioned is not conceded.

Although the parties are somewhat inclined to quibble regarding the fundamental premise on which the Commission based, and the trial court affirmed, the order establishing the joint rate of ninety cents from Setab to Garden City and $1.10 from Marienthal to the same city there can be no doubt respecting that question when the order and the trial court's journal entry of judgment are read and carefully examined. Touching that subject the order contains the following statement:

"It is not reasonable, in our judgment, for a railroad to voluntarily establish rates to competing refineries and decline to join with other railroads in establishing an equally favorable level of rates to other refineries and attempt to justify the resulting discrimination by the contention that the rates voluntarily established by it are unreasonably low. We think we may properly use these voluntarily established rates as a measure of reasonableness for the rates under attack. So measured, the present rates are far in excess of reasonable rates and we so find. As we have pointed out, the rates sought by the complaint are somewhat higher than the prevailing level of rates to the refineries in this area on both the Missouri Pacific and the Santa Fe, and while the rates sought are joint line rates, and therefore properly should be somewhat higher than the single line rates, the difference should not be excessive. Ordinarily a rate resulting from a combination of local rates would be considered the highest possible reasonable rate. If the level of rates maintained generally by the Missouri Pacific to the Colorado refineries on its line is used as the level of the local rates from Setab and Marienthal to Scott City, and the resulting rates combined with the Santa Fe's local rate from Scott City to Garden City, we have shown that a rate of 80 cents results from Setab to Garden City and a rate of $1.00 from Marienthal to Garden City. As measured by the voluntarily maintained rates, the rates sought by complainant (90 cents from Setab and $1.10 from Marienthal) are reasonable for a minimum weight of 40 tons per car, and we so find."

And the journal entry of judgment reads:

"1. That the order of the defendant, The State Corporation Commission of the State of Kansas, made and entered on the 20th day of August, 1951, and under review in this proceeding, is not unjust, unlawful or unreasonable but is in all respects just, lawful and reasonable and in accord with the law and the evidence; and

"2. That it does not appear from the evidence and the record that the order of the defendant, The State Corporation Commission of the State of Kansas, made and entered on the 20th day of August, 1951, and under review herein, will result in confiscation of the property of the applicant, but, on the contrary, the court finds from an independent review and consideration of the evidence contained in the record concerning the question of confiscation that the rates prescribed by the said order under review herein are higher than the

rates generally voluntarily maintained by the rail lines in the general area in which such rates are effective, including the railroad of the applicant for review. The rates prescribed by the said order under review appear to be well within the bounds of lawfulness and reasonableness, and the court finds that the rates prescribed by the order under review have not been shown to be confiscatory nor noncompensatory."

Preliminary to a discussion of the issues it is well to have in mind certain provisions of the statute relating to the duties and obligations of the carriers, the commission, and the district court under the conditions and circumstances here involved.

Under the provisions of G. S. 1949, 66-107, the carriers are required to establish "reasonably efficient and sufficient . . . joint service," and to "establish just and reasonable rates, joint rates, . . ." By virtue of the same section "every unjust or unreasonable discriminatory or unduly preferential . . . rate, joint rate, . . . is prohibited" and declared to be unlawful and void, and the State Corporation Commission is empowered after notice and hearing to require common carriers "to establish and maintain just and reasonable joint rates wherever the same are reasonably necessary to be put in. . . ."

G. S. 1949, 66-110 and 66-111, provide for complaints to the Commission and for hearings thereon. Section 66-113 provides that if, upon such hearing, "the rates, joint rates, . . . are found to be unjust, unreasonable, unfair, unjustly discriminatory or unduly preferential, or in any wise in violation" of the provisions of the Act or the laws of the State the Commission "shall have the power to fix and establish, and to order substituted therefor, such rates, joint rates, . . . as it shall find, determine or decree to be just, reasonable and necessary."

G. S. 1949, 66-118j, which follows preceding sections of the statute authorizing a review in district court of an order made by the Commission, provides "if the court upon such hearing shall find such order of the Commission under review to be lawful and reasonable, it shall render judgment sustaining said order, . . ." The succeeding section, 66-118k, authorizes the court to set aside an order of the Commission if it finds such order to be unlawful or unreasonable.

Appellant's position on appeal is (1) that under the law and undisputed evidence the rates established by the Commission's order are noncompensatory and confiscatory and by reason thereof both unreasonable and unlawful because in violation of Section 1 of the

Fourteenth Amendment to the Constitution of the United States, and (2) that the Commission improperly used its voluntarily established rates between Setab and Marienthal, respectively, and Sugar City as a measure and basis for determining the reasonableness of the rates sought in the complaint and established by the order.

The second proposition urged by appellant as a ground for reversal of the judgment, to which we shall first direct our attention, was decided by this court long ago contrary to its position, hence we have no hesitancy in holding that it cannot be upheld.

In *Railroad Co. v. Utilities Commission,* 95 Kan. 604, 148 Pac. 667, we held:

"It is proper for the public utilities commission in establishing coal rates between Pittsburg, Kan., and Concordia, Kan., on purely intrastate transportation, to use the voluntary intermediate rates established and long maintained by the carriers as a basis for fixing such rates." (Syl. ¶ 6.)

Later in *Railway Co. v. Utilities Commission,* 103 Kan. 111, 114, 172 Pac. 1022, where we cited the foregoing decision as an authority, we said:

". . . Freight rates, voluntarily established by carriers, and rates established by authority of law,—whether by legislatures or by commissions—and·rates judicially determined to be reasonable and just, are practical and valuable aids in rate-making and in determining the fairness of a disputed rate, provided, of course, that the similarity of the traffic conditions is established or a proper allowance is made to overcome existing differences in traffic conditions. . . ." (p. 114.)

For other decisions recognizing and applying the rule adhered to by this court see, e. g., *Atchison, T. & S. F. Ry. Co. v. State,* 130 Okla. 263, 267 Pac. 253, where it is held:

"Rates charged elsewhere under similar circumstances for the same or similar service are evidentiary of the reasonableness of the rates in issue with respect both to the rights of the public and of the carrier, the assumption being logical that a rate reasonable in one instance will be reasonable in all instances where the same or similar services are performed under similar conditions." (Syl. ¶ 5.)

See, also, *Sugar From Gulf Coast Port Groups to Northern Points,* 220 I. C. C. 623, 642, where it is said: ". . . The prevailing level of rates on a particular commodity within a given territory or territories always has been recognized as a reliable test of the reasonableness of other rates on the same commodity between points within the same territory or territories . . ."; *Auburn Mills v. Chicago & A. R. Co.,* 222 I. C. C. 495, 497, stating: ". . . Rates estab-

lished voluntarily can fairly be taken as a measure of what carriers consider reasonable. *Sheridan Chamber of Commerce v. Chicago, B. & Q. R. Co.* 28 I. C. C. 250 . . ."; and *C. H. Dexter & Sons, Inc., v. New York, N. H. & H. R. Co.,* 234 I. C. C. 597, 599, which reads: ". . . Rates voluntarily established by the carriers may be accepted as evidence that other rates for comparable service are unreasonably high. *Columbian Paper Co. v. Norfolk & W. Ry. Co.,* 225 I. C. C. 630. . . ."

In reaching the conclusion heretofore announced we have rejected, not overlooked, appellant's contentions to the effect that lack of similarity in existing traffic conditions precluded the Commission from using its voluntarily established rates from Setab and Marienthal, respectively, to Sugar City as a basis for fixing the joint rates in question. We fail to find any such disparity in the record and we know of no sound ground for holding, as appellant would have us do, that simply because rates were single line rates they afforded the Commission no basis of comparison for the establishment of reasonable joint line rates.

Having determined that appellant's voluntarily established rates were properly used by the Commission as a basis for fixing the rates in question we have little difficulty in concluding that the rates established by that body were reasonable under the existing conditions and circumstances. Without repeating the details it suffices to say the evidence discloses the local rates maintained by appellant on beets from Marienthal and Setab, respectively, to Scott City were exorbitant, prohibitive, and highly discriminatory and that the joint rates established from those points to Garden City were higher than the single line rates voluntarily maintained by appellant and by the Santa Fe for like distances in the same territory. In such a situation and under the other conditions and circumstances heretofore set forth in the record we do not believe it can be said the established joint rates were unreasonable and we so hold.

This conclusion, in our opinion, is not only in accord with but is required by our decision in *Railroad Co. v. Utilities Commission,* supra, which holds:

"Although tables of comparative freight rates may show that an intrastate coal rate fixed by the public utilities commission is extremely low, they can not be held to prove that the rate complained of is unprofitable when the same intrastate rates on the same commodity have been voluntarily established and long maintained by the carriers in other portions of the state." (Syl. ¶ 1.)

And states:

"We have frankly conceded that the one dollar and twenty cent rate is very low. We can not say that it is noncompensatory, nor even that it is unprofitable. We do not determine that point. We leave that matter open. We do say that so long as the intermediate rates between the coal district and the salt district stand at $1 per ton, that intermediate rate of $1 is a fair, just and proper factor in composing a freight rate from Pittsburg to Concordia, and that the order of the commission based thereon is reasonable and just and should be observed and obeyed so long as the one dollar rate to Abilene and similar intermediate points is maintained. . . ." (p. 624.)

.   .   .   .   .   .   .   .   .   .   .   .   .

"And so here with equal force we may hold that the state legislature, and the public utilities commission operating under its authority, are entitled to keep the highways of intrastate commerce open to intrastate traffic upon fair and equal terms; and a discrimination in rates in favor of all the wide region lying between the Pittsburg coal district and the Hutchinson-Kanopolis salt district against Concordia, under conditions of traffic presumably similar and certainly not shown to be dissimilar, is an evil which can not be tolerated." (p. 627.)

When carefully analyzed all contentions advanced ·by appellant in support of its first position are based upon the premise that under the facts, circumstances, and conditions disclosed by the record it may challenge the joint rates fixed by the Commission on the ground they are noncompensatory and confiscatory and therefore in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States, providing that no person may be deprived of his property without due process of law. We do not agree.

It is our view the question thus raised by appellant was decided adversely to its contentions by this court in *Railroad Co. v. Utilities Commission,* supra, where it is said and held in substance that a carrier could not be heard to say or held to prove that rates established by the Commission and complained of were unprofitable so long as it maintained lower voluntarily established rates in the same or similar territory.

In an attempt to forestall the foregoing conclusion appellant points out the constitutional question was not urged or passed upon in the case just mentioned. Quite true. Nevertheless we fail to see where that fact affords sound ground for differentiation or detracts from the force and effect we give that decision. The difference between an unprofitable and a confiscatory rate is simply one of degree. Even so our conclusion that under the existing conditions and circumstances appellant cannot now urge the rates established by the Commission were of such character as to violate rights

guaranteed to it under the due process clause of the constitution finds ample support in the decisions of other jurisdictions.

See *Alabama &c Ry. v. Mississippi R. R. Comm.*, 203 U. S. 496, 51 L. Ed. 291, 27 S. Ct. 163, where it is said:

"While it may be true that a local railway's share of an interstate rate may not be a legitimate basis upon which a state railroad commission can establish and enforce a purely local rate, yet, whenever, under the guise of pretense of a rebilling rate, some merchants are given a low local rate, the commission is justified in making that rate the rate for all. It is not bound to inqure whether it furnishes adequate return to the railway company, for the state may insist upon equality, to be enforced under the same conditions against all whom perform a public or quasi public service. When voluntarily the Vicksburg company established a local rate of 3½ percent from Vicksburg to Meridian for those who had, within ninety days, made a shipment over the Shreveport road, it estopped itself from complaining of an order making that rate applicable to all shipments, no matter whence they arose, and in favor of all merchants, whether those transporting over the Shreveport road or not. . . . In the present case we are not construing an act of the state of Mississippi or passing upon the powers which by it are given to the state railroad commission. Those matters are settled by the decision of the supreme court of the state, and the question we have to consider is the power of the state to enforce an equality of local rates as between all parties shipping for the same distance over the same road. That a state has such power cannot be doubted, and it cannot be thwarted by any action of a railroad company which does not involve an actual interstate shipment, although done with a view of promoting the business interests of the company. Even if a state may not compel a railroad company to do business at a loss, and conceding that a railroad company may insist, as against the power of the state, upon the right to establish such rates as will afford reasonable compensation for the services rendered, yet, when it voluntarily establishes local rates for some shippers, it cannot resist the power of the state to enforce the same rates for all. The state may insist upon equality as between all its citizens, and that equality cannot be defeated in respect to any local shipments by arrangements made with or to favor outside companies." (Pp. 500, 501.)

For other interesting and instructive decisions dealing with the subject and tending to support the conclusions herein announced see *Baltimore & O. R. Co. v. United States*, 12 Fed. Supp. 261; *State E. Rel. N. P. R. Co. v. Public Serv. Comm.*, 95 Wash. 376, 163 Pac. 1143, and *Railroad Commission of La. v. St. L. S. W. Ry. Co.*, 23 I. C. C. 31, affirmed in *Houston and Texas Ry. v. United States*, 234 U. S. 342, 58 L. Ed. 1341, 34 S. Ct. 833.

We find nothing in the record or in the contentions advanced by the appellant with respect thereto warranting a conclusion the trial court erred in holding the order made by the Commission was lawful and reasonable. Therefore the judgment must be and it is hereby affirmed.